IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERRY KNUTSON, individually, <br> and as Assignee, and <br> DONAL BARRY, individually, <br> and as Assignee, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD RANDALL, <br> DON HARRIS, <br> CHARLES SHAW <br> MICHAEL K. WILSON, <br> ROBERT LUNA, <br><br> Defendants. | CASE NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs TERRY KNUTSON and DONAL BARRY (collectively, "Plaintiffs"), individually and in their capacity as assignees of certain other investors, file this Original Complaint against the above-named Defendants (collectively, "Defendants") and would respectfully show the Court as follows:

### NATURE OF THE CASE

1. The claims in this case involve conspiracy to defraud and other wrongdoing committed by Defendants in connection with the offer and sale of securities in Wireless Power, LLC ("Wireless Power" or "WP"), a company promoted by Defendants as developing and investing in the technology to provide wireless electricity services across the globe.

2. From at least January 2015 to the present, Defendants have orchestrated a fraudulent scheme and made materially false and misleading statements and omissions to potential and actual investors, including Plaintiffs, in order to offer and sell membership units of Wireless

1

Power.  The Defendants used various entities they owned or controlled to execute the scheme, including Tesla Energy LLC, Holmes Financial Services LLC, and Texanova Energy, Inc.  It was a sophisticated scheme engineered by Defendants Richard Randall and Don Harris, with the cooperation and complicity of Defendants Charles Shaw, Michael Wilson, and Robert Luna.

3. Through the fraudulent WP offering, Defendants raised more than $13 million from approximately 85 investors located in various U.S. states and elsewhere.  In offering documents and other communications with investors, Defendants, among other things:

- falsely projected WP income in the range of $700,000 to $4,100,000 during the years 2015 and 2016;

- falsely claimed that WP was an affiliate of Texzon Utilities LTD;

- falsely represented Tesla Energy LLC's relationship with Texzon Technologies, Inc.;

- falsely represented that Texanova Energy, Inc. had the ability to acquire and aggregate electricity from providers around the world for resale by Tesla when, in fact, Texanova was a shell company which did not have the capacity to acquire or aggregate electricity;

- failed to advise investors that the Defendants would use Holmes Financial Services, LLC to misappropriate millions of dollars of investor money; and

- failed to disclose that Richard Randall was convicted of a violation of 18 U.S.C. § 1014 in the Northern District of Texas.

4. Instead of using WP investors' funds as promised and represented in the offering documents and other communications, Defendants used most of the investors' funds to pay themselves and companies they controlled, for unknown purposes.

5. Based on these intentional misrepresentations and conduct alleged below, Defendants have (a) offered and sold securities in violation of the antifraud provisions of the federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder; (b) violated Section 20(b) of the Exchange Act; (c)

violated Section 15(a)(1) of the Exchange Act requiring the registration of brokers of securities; and (d) violated the antifraud and registration provisions of the Texas Securities Act.

6. To recoup their investments and to prevent any further fraudulent activity and harm, Plaintiffs bring this action against Defendants seeking: (i) rescission of their investments sold by the Defendants; (ii) compensatory damages; (iii) punitive damages; (iv) attorney's fees and costs; and (v) pre- and post-judgment interest as allowed by law.

## THE PARTIES

7. Plaintiff Terry Knutson is an individual who resides in the State of California. He is the assignee of the claims of related investors: Terry and Rose Knutson 2000 Trust, Jamison Partners, LP, and Rivergate Partners, LP.

8. Plaintiff Donal Barry is an individual who resides in the State of Illinois. He is the assignee of the claims of related investors: Big D VCI, LLC, L. Phillip Seagroves, Matt Steiger, Michael Purcell, Sr., Thomas Boney, TRB Properties, LLC, Wireless Energy, DB, LLC, the Donal Barry Trust, Wireless Trade Winds, LLC, Hank Dogchuck, LLC, David G. Lenti, John O'Connor, Justin Pug, LLC, John Westbrook, and Jacqueline C. Bartolotta. Together, Knutson and Barry bring this lawsuit, individually, and as assignees of these other individuals and entities, all of whom are investors in Wireless Power.

9. Defendant Richard Randall ("Randall") is an individual who resides in Collin County, Texas. He may be served with a summons and this Complaint at 2504 Addison Street, McKinney, TX 75071-8481, or wherever he may be found. Randall is in the business of setting up shell companies and using them to accomplish his schemes. Among other entities, he has had incorporated, controlled, or associated himself with: Greater Cortez, LLC, Greater Southern Energy Acquisitions, LLC, Greater Southern Real Estate Acquisitions, LLC, Randall Farms, LLC,

3

Vision Horse, Ltd., Normandy Equipment, Ltd., Holmes Trading, Inc., Holmes Financial Services LLC, RDR Resources, LLC, Sovereign Nuclear Power Co., LLC, Sovereign Alternative Power Co., LLC, R2D2 Resources, LLC, and Tesla Power Company.

10. Defendant Don Harris ("Harris") is an individual who resides in Texas. He may be served with a summons and this Complaint at 14881 Quorum Drive, Suite 950, Dallas, Texas, or wherever he may be found. Harris is in the business of setting up shell companies and using them to accomplish his schemes. Among other entities, he has had incorporated, controlled, or associated himself with: GFS Fulfillment, Inc., Sirrahco, Inc., Sys2Go, Inc., Texanova Energy Company, Texanova Energy, LLC, Puration, Inc. (SWRS), Innova Pure Water, Inc., R2D2 Resources, LLC, and Kilowind LLC.

11. Defendant Charles "Skip" Shaw ("Shaw") is an individual who resides in Dallas County, Texas. He may be served with a summons and this Complaint at 4042 Morman Lane, Addison, Texas 75001-4901, or wherever he may be found. Shaw is a long-time colleague of Harris who has assisted in implementing his schemes. He was paid with investor money. In addition, Shaw has perpetrated other fraud schemes in Dallas County, including one victimizing his daughter and son-in-law.

12. Defendant Michael K. Wilson ("Wilson") is an individual who resides in Collin County, Texas. He may be served with a summons and this Complaint at 3916 Wyeth Drive, Plano, TX 75023-5907, or wherever he may be found. Wilson directed the flow of investors' money to Randall, Harris, and their entities. He was paid with investor money.

13. Defendant Robert "Rick" Luna ("Luna") is an individual who resides in Dallas County, Texas. He may be served with a summons and this Complaint at 25 Highland Park

4

Village, Suite 100-301, Dallas, Texas 75205, or wherever he may be found. Luna participated in referring investors and was paid fees.

## JURISDICTION AND VENUE

14. The claims asserted in this suit arise under and pursuant to Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission [17 C.F.R. § 240.10b-5]. The claims also arise under and pursuant to the Texas Securities Act [Tex. Rev. Civ. Stat. Art. 581] and Texas state law.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The amount in controversy exceeds $1,000,000.

16. As described in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications, and electronic messaging systems.

17. This Court has personal jurisdiction over Defendants because they are all residents and/or citizens of the State of Texas, and because they engaged in business in Texas by contracting and communicating with, through the mail or otherwise, Plaintiffs.

18. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) because certain of Defendants' acts, practices, transactions, and courses of business alleged herein occurred within this District.

## FACTUAL BACKGROUND

*The Wireless Power Opportunity*

19. Plaintiffs were first introduced to the Wireless Power opportunity in 2015. WP was pitched to them as a company on the verge of capitalizing on a ground-breaking and revolutionary opportunity to harness electricity and to distribute it wirelessly to all parts of the globe.

5

20. At various times, Defendants told Plaintiffs or led them to believe that WP had already laid the groundwork for the transmission of these electricity services with various types of relationships and agreements with other entities or partners. In fact, Defendants represented to Plaintiffs that many of these agreements, such as joint venture agreements, licensing agreements, marketing agreements, and the like had been negotiated and were in place.

21. Defendants also told Plaintiffs and others that their investments in WP would be used to purchase ownership interests in three other entities: Tesla Energy, LLC ("Tesla"), Texanova Energy, Inc. ("Texanova"), and Texzon Technologies, Inc. ("Texzon"). Texzon owns and operates the technology and other equipment for the wireless transmission of electricity services. Generally speaking, Defendants described Tesla as something of a marketing company which would help promote and facilitate business ventures involving Texzon's electricity transmission capabilities. Defendants described Texanova as a company having expertise in generating the electricity from various sources to be transmitted using Texzon's technology.

22. Defendants repeatedly told Plaintiffs and other investors that Wireless Power was the exclusive vehicle to invest in this wireless electricity technology. That is, the only way for Plaintiffs and other investors to participate in the opportunity was by purchasing stock in Tesla, Texanova, and Texzon through Wireless Power.

23. Plaintiffs had never met any of the Defendants before hearing about Wireless Power. Nevertheless, Defendants seemed like legitimate and credible business men who were capable of maximizing the wireless energy opportunity.

*The Offer and Sale of Securities in Wireless Power*

24. From at least January 2015, Defendants offered and sold securities in the form of membership units in Wireless Power, representing that investors would profit from the company's

6

anticipated business of providing wireless electricity services across the globe through the investments in Tesla, Texanova, and Texzon.

25. Defendants promoted and marketed the membership units via a private placement memorandum (the "Wireless Power PPM" or "PPM"), an Investor Book, and miscellaneous documents wherein they represented that they planned to raise up to $79,000,000 from investors to purchase these units. Defendants began raising funds from WP investors in or about January 2015.

26. By 2016, Defendants had raised over $13 million from approximately 85 WP investors in various U.S. states and foreign countries, including the Plaintiffs, their family members and affiliates, and others.

*Defendants' Material Misrepresentations and Omissions in Connection With the Offer, Purchase, and Sale of Securities in Wireless Power*

27. In the Wireless Power PPM, which Defendants provided to actual and potential investors, including Plaintiffs, they made materially false and misleading statements and omissions concerning the investments in WP. These included, among others, misrepresentations regarding the use of investor proceeds and the scope of the WP investment, and misrepresentations and omissions concerning Defendants' backgrounds, their affiliated entities, and the management and business (or lack thereof) of Wireless Power.

28. More specifically, in connection with soliciting and raising funds from Plaintiffs and others, Defendants misrepresented that:

- Tesla had a Master Distribution Agreement with Texzon and was the sole licensed Master Distributor for Texzon of the electro-magnetic wave technologies;

- Tesla would be the only vehicle available to the public for investment in "this new technology"; and

- Tesla was to (or had) become Zenneck Power and an existing Tesla/Texzon Agency Agreement was to be transferred to Zenneck.

29. In reality, Tesla was not a "Master Distributor" for Texzon, nor was it the exclusive investment vehicle for Texzon units. In fact, Defendant Rick Randall owned and/or controlled Tesla, which he would ultimately use for his own personal benefit. Similarly, Tesla did not transform into Zenneck Power and never had the authority to do so; thus, the Texzon Agency Agreement was not transferred to Zenneck.

30. Additionally, Defendants falsely represented the following either in the Wireless Power PPM or in other communications directly to investors:

- Texanova had the ability to acquire and aggregate electricity from providers around the world for resale by Tesla;

- Texanova owned technology to transport electricity from multiple and remote locations;

- Texanova—or its affiliates— had a joint venture agreement with Hover Energy to purchase renewable energy; and

- Texanova had an Equity Purchase Agreement with an actual operating company.

31. Contrary to these representations, Texanova was a mere corporate "shell" — it had no employees, no business plan, no organization chart, no assets, and no agreements with any power providers anywhere.

32. With respect to the structure and management of Wireless Power, Defendants represented that it was an affiliate of Texzon Utilities Ltd. and that a credentialed list of individuals served the company as its officers and directors. But neither of these representations was true. Wireless Power was not affiliated with Texzon Utilities Ltd. at all. Moreover, none of the individuals listed in the "Principal Officers and Directors" section of the Wireless Power PPM –

save for Marshall Dooley – were actually involved in or associated with the management of the company.

33.     Equally egregious, Defendant Rick Randall never disclosed to Plaintiffs that he owned or was affiliated with Holmes Financial LLC ("Holmes Financial"), or that he planned to use Holmes Financial to steal investor funds from Wireless Power for his own benefit and that of the other Defendants.  In fact, Randall either made or participated in the following transfers, among others, involving investor funds, contrary to the express terms of the offering documents and contrary to direct representations made by Defendants to Plaintiffs and other investors:

- Transferred at least $13,719,500 directly to Holmes Financial;

- Transferred at least $400,000 to Kilowind, LLC, a company controlled by Defendant Harris;

- Transferred at least $150,000 to Defendant Luna as a bonus for vague and unidentified "services rendered";

- Transferred approximately $651,658 to Defendant Shaw, who in turn transferred $19,200 to Luna Energy Company (owned by Defendant Luna) for introducing investors to Wireless Power; and

- Transferred approximately $1,013,874 directly to Defendant Harris, who transferred approximately $740,340 to Defendant Wilson.

34.     To induce Plaintiffs and others to invest in Wireless Power, Defendants engaged in a practice and course of business that consisted of making the false statements and omissions of material facts alleged above concerning:  the nature of WP's business, the use of investor proceeds, and the amount of investment returns investors could expect to realize through WP's business. These misrepresentations and omissions are not the only acts Defendants have taken in furtherance of their scheme.

35. In addition, Defendants engaged in a practice and course of business of misusing investor proceeds for their own purposes and benefits including paying commissions, covering non-WP expenses, and personally siphoning funds from the WP investment.

*Defendants' Failure to Comply With Broker Registration Provisions*

36. Other wrongdoing committed by Defendants includes their failure to register as brokers under federal and state securities laws. Indeed, none of the Defendants was a registered broker during the relevant period. Yet, during that period, the Defendants met with and induced people to invest and participate in the marketing or sale of securities to numerous other unsuspecting victims.

37. Harris, although unlicensed, also set up bank accounts to receive wire transfers of investor funds and provided account and wire instruction information to effectuate those transfers and secret compensation.

38. As noted above, at least $13,719,500 million in investor funds was transferred to bank accounts held by Holmes Financial, much of which constituted illegal and undisclosed commissions.

## CLAIMS FOR RELIEF

### FIRST CLAIM
(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)
(All Defendants)

39. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

40. By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly:

    (a)    employed devices, schemes, and artifices to defraud;

10

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

41. Defendants engaged in this conduct intentionally, knowingly or with severe recklessness with respect to the truth.

42. By engaging in this conduct, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM
(Control Person Liability Under Section 20(b) of the Securities Exchange Act)
(Defendants Harris and Randall)

43. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

44. By their conduct as alleged above, Defendants directly and indirectly, acted through and used another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

45. In acting through and using another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Defendants acted intentionally, knowingly or with severe recklessness with respect to the truth.

## THIRD CLAIM
(Offers and Sales of Securities by an Unregistered Broker
Violation of Section 15(a)(1) of the Exchange Act)
(All Defendants)

46. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

47. Defendants, while engaged in the business of effecting transactions in securities for the account of others, made use of the mails or the means or instrumentalities of interstate

11

commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered in accordance with Section 15(a)(1) of the Exchange Act.

48. As described herein, Defendants violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

**FOURTH CLAIM**
(Rescission under the Texas Securities Act)
(All Defendants)

49. Pursuant to Texas Revised Civil Statutes Article 581, Section 33A(1), "[a] person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an order under 23A or 23-2 of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security."

50. Defendants sold securities in violation of Section 12 of Texas Revised Civil Statutes Article 581, as Defendants were not registered under the laws of the State of Texas and do not fall under any relevant exemption. As a result, Plaintiffs seek rescission of the purchase of the securities.

51. In the alternative, Article 581, Section 33A(2) provides, "[a] person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission…."

52. As a result of Defendants' misstatements and omissions of material facts, Plaintiffs seek rescission of the purchase of the securities.

**FIFTH CLAIM**
(Conspiracy to Defraud)
(All Defendants)

53.     Beginning at least by January 2015, and continuing until this action is filed, the Defendants conspired with each other to defraud the Plaintiffs by extracting large investments through the use of misrepresentations and omissions upon which the Defendants relied and suffered damages as a result.

54.     It was part of the conspiracy for the Defendants to claim to use Wireless Power as the conduit to collect investor funds and immediately transfer those funds to separate shell companies established by the Defendants to perpetrate the fraud.

55.     It was a further part of the conspiracy that the Defendants would create a circuitous procedure designed to lull the Plaintiffs into believing that they would be entitled to licensing fees, royalties and other income generated by their investments, when, in fact, the shell entities had no contractual relationships with legitimate companies which would result in such income.

56.     It was further part of the conspiracy that Defendants Randall and Harris would represent that (1) they had a joint venture with a major defense contractor; (2) that they had patents; (3) that Tesla was an international marketing company which would become a public company; (4) that Texanova would enter into power purchase agreements with wind farms and power plants; (5) that an agreement was in place with an African company to sell power which was paying substantial licensing fees; and (6) that there were trillions of dollars in potential revenue, but at least $8 billion in revenue in the first year.

57.   It was further part of the conspiracy that when investors such as Plaintiffs would make a demand for financial information, Defendants Randall and Harris would fail and refuse to

provide such. Any information provided was deceptive and fraudulent. By utilizing this scheme, Defendants would avoid attracting more negative investor attention.

58. It was further part of the conspiracy to use misappropriated funds to obtain promissory notes for their personal benefit.

A. **Overt Acts**

(i) On or about June 5, 2015, Defendant Harris provided Marshall Dooley with wire transfer instructions for Holmes Financial and directed him to transfer $325,500;

(ii) On or about June 25, 2015, Defendant Wilson arranged a meeting between Defendants Randall, Harris and potential investors;

(iii) On or about October 29, 2015, Defendant Wilson acknowledged soliciting "Dallas professionals" to invest in WP and a $2 million wire transfer from investors in Hawaii and Australia;

(iv) On or about January 19, 2016, Defendants Harris, Wilson, Shaw, and Luna made several misrepresentations to Plaintiff Knutson regarding investments in WP and other companies owned or controlled by Defendant Harris;

(v) On or about January 20, 2016, Defendant Shaw acknowledged receipt of two wire transfers from WP investors in the amount of $550,000;

(vi) On or about January 21, 2016, Defendant Shaw directed Marshal Dooley to wire $400,000 from the WP account to Defendant Randall;

(vii) On or about February 1, 2016, Defendants enticed Plaintiff Knutson to invest $1,625 million in WP through deceit and material misrepresentations;

(viii) On or about February 1, 2016, Defendants enticed Plaintiff Barry to invest $3 million in WP through deceit and material misrepresentations;

(ix) On or about February 1, 2016, Defendant Shaw provided Marshal Dooley the new bank wire transfer instructions for Holmes Financial;

(x) On or about February 2, 2015, Defendants enticed Plaintiff Barry to invest $1.020 million in WP through deceit and misrepresentations;

(xi) On or about February 2, 2016, Defendant Shaw directed Marshall Dooley to wire transfer all available funds from the WP account to Holmes financial and leave a balance of $50,882;

14

(xii) On or about February 3, 2016, Defendant Shaw instructed Marshall Dooley to wire transfer $2 million from the WP bank account to Holmes Financial;

(xiii) On or about February 3, 2016, Defendant Wilson advised WP investors that they would receive shares of Zenneck Power;

(xiv) On or about February 4, 2016, Defendants obtained another investment of $1.625 million in WP through deceit and misrepresentations;

(xv) On or about February 3, 2016, Defendants Randall and Harris transferred and caused to be transferred $150,000 of WP investor funds from Holmes Financial to an account owned and controlled by Kilowind LLC;

(xvi) On or about February 4, 2016, Defendants Harris and Shaw received an email advising that Holmes Financial transferred $150,000 of WP investor funds to Kilowind LLC on February 3, 2016;

(xvii) On or about February 5, 2016, Defendant Harris transferred and caused to be transferred $150,000 of WP investor funds from a bank account owned and controlled by Kilowind LLC to a bank account in the name of Pantheon Environmental; and

(xviii) On or about March 24, 2016, Defendant Harris leased a private jet to fly Plaintiffs and other investors to Lubbock, Texas.

59. The afore pleaded facts and circumstances constitute an illegal civil conspiracy in that the Defendants entered into an agreement for an unlawful purpose, to wit, to defaud the Plaintiffs and others, and one or more members of the conspiracy committed overt acts under false pretenses in furtherance of same. As a result, the Plaintiffs have suffered damages in an amount to be determined by the jury, including punitive damages.

## INTEREST AND ATTORNEYS' FEES

60. Plaintiffs seek prejudgment interest at the maximum legal rate on their money invested in the scheme and their reasonable and necessary attorneys' fees as provided for by Texas Revised Civil Statutes Article 581.

## JURY DEMAND

61. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

## RELIEF REQUESTED

For these reasons, Plaintiffs respectfully requests that the Court enter a judgment against Defendants, jointly and severally, as follows:

(a) For actual and compensatory damages in an amount to be determined by the jury at the time of trial;

(b) Punitive and/or exemplary damages in an amount to be determined by the jury at the time of trial;

(c) Rescission of Plaintiffs' purchase of the securities at issue;

(d) Plaintiffs' reasonable and necessary attorneys' fees and costs;

(e) Pre- and post-judgment interest as allowed by law; and

(f) For such other relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Dated: September 25, 2017.

Respectfully submitted,

*/s/ S. Cass Weiland*
S. Cass Weiland
State Bar No. 21081300
Robert A. Hawkins
State Bar No. 00796726
SQUIRE PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
214/758-1500
214/758-1550 facsimile
cass.weiland@squirepb.com
robert.hawkins@squirepb.com

and

Rose L. Romero
State Bar No. 17224700
LAW OFFICES OF ROMERO KOZUB
235 N.E. Loop 820
Suite 310
Hurst, Texas 76053
682/267-1351
rose.romero@romerokozub.com

ATTORNEYS FOR PLAINTIFFS TERRY KNUTSON AND DONAL BARRY