IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY KNUTSON, individually, | § | |
| and as Assignee, | § | |
| DONAL BARRY, individually, | § | CASE NO. 3:17-CV-02618-M |
| and as Assignee, and | § | |
| WIRELESS POWER, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| DON HARRIS, | § | |
| CHARLES SHAW | § | |
| MICHAEL K. WILSON, | § | |
| ROBERT LUNA, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT AND AUTHORITIES ......................................................................... 3

    I.      Applicable Legal Standards ........................................................................ 3

    II.    Plaintiffs Have Alleged a Plausible Claim for Securities Fraud Under
Section 10(b) of the Exchange Act and Rule 10b-5 ............................. 5

    III.   Plaintiffs Have Alleged a Plausible Claim for Control Person Liability
Under Section 20 of the Exchange Act .................................................. 12

    IV.   Plaintiffs Claim Under Section 15(a)(1) of the Exchange Act .......................... 14

    V.    Plaintiffs Have Alleged Plausible Claims for Violation of the Texas
Securities Act ............................................................................................... 15

    VI.   Plaintiffs Have Alleged a Plausible Claim for Conspiracy Under Texas
Law .............................................................................................................. 16

    VII.  Defendants' Motion to Abate Discovery is Premature ......................... 17

    VIII. Plaintiffs Should Be Granted Leave to Amend If the Court Determines
Their Claims Do Not Satisfy the Pleading Requirements .................... 18

CONCLUSION ........................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
   291 F.3d 336, *reh'g. and reh'g en banc denied*, 45 Fed. Appx. 327 (5th Cir.
   2002) ....................................................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ....................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................................3, 4

*Chon Tri v. J.T.T.*,
   162 S.W.3d 552 (Tex. 2005) ..............................................................................................17

*Clapper v. Am. Realty Investors, Inc.*,
   2015 U.S. Dist. LEXIS 71543 (N.D. Tex. June 3, 2015) (Fitzwater, J.) ...............................19

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ...............................................................................................4

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) .................................................5, 13

*Dussouy v. Gulf Coast Inv. Corp.*,
   660 F.2d 594 (5th Cir. 1981) ..............................................................................................18

*Fin. Acquisition Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) ...............................................................................................9

*Garcia v. Boyar & Miller, PC.*
   2007 U.S. Dist. LEXIS 63432, 2007 WL 2428572 (N.D. Tex. Aug. 28, 2007) ......................5

*Greco v. NFL*,
   116 F. Supp.3d 744, 753 (N.D. Tex. 2015) (Lynn, J.) ....................................................18, 19

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
   302 F.3d 552 (5th Cir. 2002) ...............................................................................................4

*Isquith v. Middle S. Utils. Inc.*,
   847 F.2d 186 (5th Cir. 1988) ..............................................................................................16

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ...............................................................................................4

ii

*In re Key Energy Servs.*,
    166 F.Supp.3d ....................................................................................................13

*In re Key Energy Servs. Sec. Litig.*,
    166 F.Supp.3d 822, 842 (S.D. Tex. 2016) .............................................................13

*Lapicola v. Alternative Dual Fuels*,
    2002 U.S. Dist. LEXIS 5941 (N.D. Tex. Apr. 8, 2002)........................................18

*Lohr v. Gilman*,
    248 F.Supp.3d 796, 813 (N.D. Tex. 2017) (Lindsay, J.) ......................................19

*Mercury Air Group, Inc. v. Mansour*,
    237 F.3d 542 (5th Cir. 2001) ..................................................................................9

*N. Port Firefighters' Pension v. Temple-Inland, Inc.*,
    936 F.Supp.2d 722 (N.D. Tex. 2013) ..............................................................12, 13

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ...............................................................................9, 10

*Regional Props., Inc. v. Fin. and Real Estate Consult. Co.*,
    678 F.2d 552 (5th Cir. 1982) ................................................................................14

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................13

*Spitzberg v. Hous. Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) ................................................................................16

*Steiner v. Southmark Corp.*,
    734 F.Supp. 269 (N.D. Tex. 1990) ......................................................................4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007).......................................10

*Timberlake v.Synthes Spine Co., L.P.*,
    2009 WL 926990, 2009 U.S. Dist. LEXIS 29074 (S.D. Tex. March 31, 2009)......................12

*Trenholm v. Ratcliff*,
    646 S.W.2d 927 (Tex. 1983)............................................................................15, 16

*United States ex rel. Williams v. Bell Helicopter Textron, Inc.*,
    417 F.3d 450 (5th Cir. 2005) ..................................................................................4

*Zar v. Omni Indus., Inc.*,
    813 F.2d 689 (5th Cir. 1987) ................................................................................15

iii

**Statutes**

15 U.S.C. § 77z-1(b)(1) ...................................................................................................17

15 U.S.C. § 78t(a) ....................................................................................................12, 13

15 U.S.C. § 78u-4 ............................................................................................................17

Exchange Act ..................................................................................................................13

Exchange Act Section 10(b) ..................................................................................... *passim*

Exchange Act Section 15(a)(1) .....................................................................................2, 14

Exchange Act Section 20 ......................................................................................12, 14, 20

Exchange Act Section 20(a) ...................................................................................12, 13

Exchange Act Section 20(b) .............................................................................................2

Exchange Act Section 29(b) ...........................................................................................14

PSLRA ...................................................................................................................... *passim*

Rules 9(b), 12(b)(6), and the Private Securities Litigation Reform Act .........................................2

Texas Securities Act ......................................................................................................15

Texas Securities Act ........................................................................................................2

TSA .........................................................................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 8 ..............................................................................................................4

Fed. R. Civ. P. 15(a)(2) ...................................................................................................18

Fed. R. Civ. 9(b) ....................................................................................................... *passim*

Rule 9(b)…operates ..........................................................................................................5

Rule 10b-5 ................................................................................................................ *passim*

Rule 12(b)(6) .........................................................................................................3, 4, 19

Rule 15(a) ......................................................................................................................18

Rule 26(a)(1) .................................................................................................................18

Rules 9(b), 12(b)(6) ............................................................................................................ *passim*

010-8574-3762/4/AMERICAS

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
### SECOND AMENDED COMPLAINT WITH PREJUDICE

Plaintiffs TERRY KNUTSON, DONAL BARRY (collectively, "Plaintiffs"), and WIRELESS POWER LLC, by and through their undersigned counsel, file this Response to Defendants' Motion to Dismiss Second Amended Complaint With Prejudice ("Motion to Dismiss") and respectfully show the Court as follows:

### PRELIMINARY STATEMENT

Shortly after Wireless Power, LLC ("Wireless Power" or "Company") was formed in October 2014, Defendants began soliciting funds from investors to purchase membership units in the Company. Defendants pitched the Wireless Power "opportunity" to Plaintiffs and other investors as a company on the verge of capitalizing on a ground-breaking and revolutionary method to harness and distribute electricity wirelessly to all parts of the globe. Defendants told Plaintiffs and other investors their funds would be used exclusively to invest in three other companies – Texzon Technologies, Inc., Tesla Energy LLC, and Texanova Energy, Inc. – all of which had the technology, resources, expertise, and relationships necessary to launch the wireless electricity venture. But virtually none of this was true.  In fact, after receiving over $5.5 million of investor funds from Plaintiffs, instead of using those funds as promised, Defendants paid themselves, their personal expenses, and funneled money to companies they controlled.

These allegations do not rest on speculation, innuendo, or even circumstantial evidence. Rather, Defendants revealed their scheme when they produced documents to Plaintiffs showing how their investor funds were actually spent.  For example, as reflected in the Second Amended Complaint and the attached exhibits, Plaintiffs were never told that their investor funds would be used to:

- Pay over $1 million directly to Defendant Harris;

1

- Pay over $650,000 directly to Defendant Shaw;

- Pay over $740,000 directly to Defendant Wilson;

- Pay over $150,000 directly to Defendant Luna;

- Pay over $400,000 to a company called Kilowind;

- Pay $150,000 to a company called Pantheon Environmental;

- Pay $175,000 to a person named Hansen;

- Pay almost $675,000 to Zenneck Power Company;

- Pay any of the Defendants a bonus for unidentified "services rendered"; or

- Pay any of the Defendants illegal commissions for introducing investors to the Wireless Power opportunity.

Simply put, the Wireless Power opportunity was a classic scam, promoted and orchestrated by Defendants to mislead Plaintiffs, take their money, and line their own pockets and the pockets of others.

On December 18, 2017, Plaintiffs filed their Second Amended Complaint alleging claims against Defendants for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, Section 20(b) of the Exchange Act, Section 15(a)(1) of the Exchange Act, the antifraud and registration provisions of the Texas Securities Act ("TSA"), and conspiracy under Texas law.  (Doc. 20).  On January 2, 2018, Defendants filed the Motion to Dismiss requesting the Court to dismiss Plaintiffs' claims with prejudice for allegedly failing to comply with the pleading requirements in Rules 9(b), 12(b)(6), and the Private Securities Litigation Reform Act ("PSLRA").

For the reasons discussed below, the Second Amended Complaint more than satisfies the pleading requirements in Rules 9(b), 12(b)(6) and the PSLRA. Moreover, Defendants' request to abate discovery pending the Court's decision on their Motion to Dismiss is premature and should

be denied.  Finally, insofar as the Court determines that Plaintiffs' Second Amended Complaint is deficient in any respect, Plaintiffs respectfully request the Court to grant them an opportunity to amend their pleading.

**ARGUMENT AND AUTHORITIES**

Defendants' Motion to Dismiss is a jointly-filed pleading in which Defendants make no effort to address, much less challenge, Plaintiffs' allegations against them individually.  Instead, Defendants generally complain that the Second Amended Complaint ("SAC") relies on "group pleading" and is too vague and conclusory to allege plausible claims for relief.  Notably, however, Defendants conveniently ignore the vast majority of Plaintiffs' allegations in the SAC.  More importantly, Defendants ignore the very documents they produced which disclose how they defrauded Plaintiffs and how each Defendant benefitted from the fraud.  When these documents and Plaintiffs' allegations are viewed in their entirety, the Court should summarily deny Defendants' Motion to Dismiss.

## I.    Applicable Legal Standards

The Court is very familiar with the pleading standards governing Rule 12(b)(6) motions to dismiss.  To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content and allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  While a plaintiff does not need to plead a complaint with detailed factual allegations, the complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 55 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above

3

the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

Hence, in reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts in the complaint as true and view them in a light most favorable to the Plaintiffs. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). In addition, in determining the sufficiency of the allegations, the Court does not look beyond the pleadings, but the pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

In cases alleging fraud, Fed. R. Civ. 9(b) requires "a plaintiff … to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (quotations omitted). In essence, Rule 9(b) requires a plaintiff to plead the "who, what, when, where and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997)). Nevertheless, because Rule 9(b) must be "read in conjunction with Fed. R. Civ. P. 8, which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 273 (N.D. Tex. 1990) (quoting *Landry v. Air Lines Pilot Ass'n. Int'l. AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)). Indeed, the Fifth Circuit has noted, "the plaintiff [ ] need not allege all facts that may be related to his claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only defendants know all the facts related to

4

the alleged fraud." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 354, *reh'g. and reh'g en banc denied*, 45 Fed. Appx. 327 (5th Cir. 2002) (internal quotations omitted).

## II.    Plaintiffs Have Alleged a Plausible Claim for Securities Fraud Under Section 10(b) of the Exchange Act and Rule 10b-5

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Plaintiffs must plead:  (1) a material representation or omission, (2) scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).  In terms of pleading fraud under Rule 9(b), this Court has stated: "[t]he particularity requirement of Rule 9(b)…operates to ensure that a securities action is not based solely on conclusory allegations." *Steiner*, 734 F.Supp. at 273.  "To satisfy Rule 9(b), a complaint need only apprise the defendant of the time, place, and nature of fraudulent behavior and defendant's relationship thereto." *Id.* Moreover, "[t]he Court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller*, *PC.* 2007 U.S. Dist. LEXIS 63432, 2007 WL 2428572 at *4 (N.D. Tex. Aug. 28, 2007).

In the Motion to Dismiss, Defendants assert that Plaintiffs' Section 10(b) claim should be dismissed because the SAC fails to adequately allege: (1) the falsity of their statements or omissions; (2) the time, place, or content of their misstatements or omissions; (3) scienter; (4) reliance; or (5) loss causation. *Defs.' Mot. To Dismiss*, ¶¶ 16-42.  Relying on a few isolated, hand-picked allegations in the SAC, Defendants essentially argue that Plaintiffs' allegations do not allege particularized facts supporting their claims. A more thorough review of the SAC, however, demonstrates otherwise.

5

A.   Plaintiffs Have Alleged Specific Facts Supporting Each Defendants' False and Misleading Statements or Omissions

Plaintiffs' allegations in the SAC clearly identify the fraudulent conduct of each Defendant, which Plaintiffs seek to redress in this suit. Indeed, Defendants simply ignore the following summarized excerpts from the SAC, which plainly allege the "who, what, when, where and how" of their fraud:

- On January 19, 2016, Defendants Harris, Shaw, and Wilson met with Plaintiff Knutson and told him that Plaintiffs' investments in Wireless Power would be used to purchase ownership interests in Tesla Energy, LLC ("Tesla"), Texanova Energy, Inc. ("Texanova"), and Texzon Technologies, Inc. ("Texzon"). These Defendants described Tesla as a marketing company, which would promote and facilitate business ventures involving Texzon's electricity transmission capabilities and would eventually be supplanted by Zenneck Power Company. They also described Texanova as a company having expertise in acquiring the electricity from various sources to be transmitted using Texzon's technology (SAC, ¶ 21);

- In addition to the January 2016 meeting, each of the Defendants (Harris, Shaw, Wilson, and Luna) told Plaintiffs and other investors, or led them to believe, that Wireless Power had negotiated and executed various agreements – joint venture agreements, licensing agreements, and marketing agreements – such that Wireless Power was on the verge of being able to transmit wireless electricity all over the globe (SAC, ¶ 20, 24);

- Each of the Defendants (Harris, Shaw, Wilson, and Luna) either wrote, was responsible for, or was aware of, the contents of the Wireless Power PPM, which they used to solicit investor funds from Plaintiffs.  In their communications with Plaintiffs and in the PPM, each of the Defendants made the following statements concerning Tesla:

  o  Tesla had a Master Distribution Agreement with Texzon and was the sole licensed Master Distributor for Texzon of the electro-magnetic wave technologies;

  o  Tesla would be the only vehicle available to the public for investment in "this new technology"; and

  o  Tesla was to (or had) become Zenneck Power and an existing Tesla/Texzon Agency Agreement was to be transferred to Zenneck, which had legitimate management (SAC, ¶¶ 25, 27-28).

6

Each of these statements was false or misleading, and each Defendant knew them as such, because, in reality: (1) Tesla was not a "Master Distributor" for Texzon, (2) Tesla was not the exclusive investment vehicle for Texzon units, and (3) Tesla had not and would never transform into Zenneck Power; thus, the Texzon Agency Agreement would not be transferred to Zenneck (SAC, ¶29);

- Throughout 2016, Defendant Harris, in his own communications with investors and in the PPM, made the following statements concerning Texanova:

  - o Texanova had the ability to acquire and aggregate electricity from providers around the world for resale by Tesla;

  - o Texanova owned technology to transport electricity from multiple and remote locations;

  - o Texanova—or its affiliates— had a joint venture agreement with Hover Energy to purchase renewable energy; and

  - o Texanova had an Equity Purchase Agreement with an actual operating company (SAC, ¶ 30).

Each of these statements was false or misleading, and each Defendant knew them as such, because, in reality, (1) Texanova was a failed water project company, which (2) only existed as a corporate "shell" – it had no employees, no business plan, no organization chart, no assets, and no agreements with any power providers, and (3) Texanova was completely unable to perform any of the activities Harris claimed. (SAC, ¶¶ 31-32);

- With regard to the structure and management of Wireless Power, the PPM states that Wireless Power was an affiliate of Texzon Utilities Ltd. and that a credentialed list of individuals served as the Company's officers and directors (SAC, ¶ 33).  Neither of these representations was true, however, because (1) Wireless Power was not affiliated with Texzon Utilities Ltd., and (2) none of the individuals listed in the "Principal Officers and Directors" section of the PPM – except for Marshal Dooley – were actually involved in or associated with the management of the Company (SAC, ¶ 33);

- In addition to the above false and misleading statements, Defendants repeatedly told Plaintiffs that Wireless Power was the exclusive vehicle to invest in the wireless electricity technology. That is, the only way for investors to participate in the opportunity was by purchasing stock in Tesla, Texanova, and Texzon through Wireless Power (SAC, ¶ 23).  In fact, at a dinner in Dallas in April 2016, Defendants Harris and Shaw perpetuated their fraud on Plaintiffs by continuing to claim exclusivity while also refusing to produce financial records (*Id.*);

7

- During the summer and fall of 2016, as Plaintiffs and other investors demanded more information about their investments, the Defendants attempted to keep their scheme from unraveling by lulling investors into a sense of security. For example, as late as September 2016, Defendants Shaw and Luna continued to assure investors that Tesla would become Zenneck Power and thus become a legitimate operating company (SAC, ¶ 29, 37);

- On or about September 21, 2016, Defendants Harris, Shaw and Luna met with representatives of Wireless Power but refused to produce any financial information or documents accounting for the investor funds (SAC, ¶¶ 37-38);

- On or about October 21, 2016, and thereafter, Rick Randall and Defendant Harris produced to Plaintiffs a "flow of funds" chart and a spreadsheet, purporting to show how their investor funds were spent.[1]  Exhibit 1 actually shows that of the first $9.41 million invested in Wireless Power, only $3.559 million actually reached Texzon (SAC, ¶ 39, Ex. 1).[2]  Exhibit 2 shows that at least $13,719,500 in investor funds was transferred to Holmes Financial and, from there, millions of dollars of investor funds flowed to Tesla, Texanova, Harris, Shaw, Wilson, Luna, and other entities and individuals (Kilowind, Zenneck, Hansen) (SAC, ¶¶ 39, 43, Ex. 2).

- No Defendant ever disclosed to Plaintiffs that Rick Randall owned or was affiliated with Holmes Financial, or that he planned to use Holmes Financial for his own and their benefit (SAC, ¶ 34).[3]  In fact, Randall, with the agreement and participation of Defendants Harris, Shaw, Wilson and Luna, orchestrated the following investor fund transfers, all of which are reflected on Exhibit 2 to the SAC, contrary to the express terms of the PPM and representations made by Defendants to Plaintiffs and other investors:

  o At least  $13,719,500 transferred directly to Holmes Financial;

  o At least $400,000 transferred to Kilowind, LLC, a company unknown to the Individual Plaintiffs and controlled by Defendant Harris;

  o At least $150,000 transferred to Defendant Luna as a bonus for vague and unidentified "services rendered";

---

[1] These documents are attached to the SAC as Exhibits 1 and 2.

[2] By October 2016, Plaintiffs had invested at least $5.5 million in the Wireless Power opportunity. (*See* SAC, ¶ 63(A)(viii), (ix), (xi)).

[3] In the Motion to Dismiss, Defendants try to distance themselves from Rick Randall by asserting that, because he was dismissed him from this suit, he is somehow no longer relevant or his role in the fraudulent scheme should be ignored. *See Defs.' Mot. to Dismiss*, ¶¶ 21, 32-33. Randall's conduct and his role in the fraud is highly relevant to Plaintiffs' claims and shows how the remaining Defendants were complicit in executing the scheme.

8

- o   Approximately $651,658 transferred to Defendant Shaw, who in turn transferred $19,200 to Luna Energy Company (owned by Defendant Luna) for introducing investors to Wireless Power; and

- o   Approximately $1,013,874 transferred directly to Defendant Harris, who transferred approximately $740,340 to Defendant Wilson (SAC, ¶¶ 33-34, 63(A)).

These are not conclusory allegations.  Nor are they impermissible "group pleadings" where Defendants, individually, cannot discern what Plaintiffs allege to be their fraudulent conduct.  *See Owens v. Jastrow*, 789 F.3d 529, 538 & n.4 (5th Cir. 2015) (noting that allegations against more than one defendant do not constitute "group pleadings" if they are sufficiently particularized). These allegations include specific, particularized facts that, in some instances, apply to more than one of the Defendants. Complaints with such defendant-specific allegations are not subject to dismissal.  *Id.* at 538.

Moreover, these allegations clearly identify of the time, place, and nature of fraudulent behavior and each Defendant's relationship thereto, as required by Rule 9(b). As set forth above, each of the Defendants made various untrue statements or misleading omissions concerning existing, material facts about the Wireless Power opportunity. Hence, Plaintiffs' allegations state a plausible claim for relief in compliance with Rules 9(b), 12(b)(6) and the PSLRA.

B.   Plaintiffs' Allegations Also Support a Strong Inference of Scienter

A plaintiff pleading a securities fraud claim must also adequately allege scienter which is "the intent to deceive, manipulate, or defraud."  *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001). Scienter may be established by alleging that a defendant acted either with the requisite intent or with severe recklessness. *Jastrow*, 789 F.3d at 535; *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 787 (5th Cir. 2006).  To plead scienter based on recklessness, a plaintiff must demonstrate "an extreme departure from the standard of ordinary care…that present[s] a danger of misleading buyers or sellers which is either known to the defendant or so

9

obvious that the defendant must have been aware of it." *Jastrow*, 789 F.3d at 536 (quoting *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)).  Overall, in considering allegations of scienter, the Court must "assess all the allegations holistically," not each in isolation.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007). Additionally, the Court must accept Plaintiffs' factual allegations as true, consider the pleadings and any other documents attached thereto, and consider all plausible inferences which support, or detract from, a strong inference of scienter.  *Id.* at 322-23.

Here, the Defendants' scienter – their intent to deceive Plaintiffs – can hardly be disputed. In fact, as alleged in the SAC and shown in the attached exhibits, each of the Defendants brazenly misled Plaintiffs about how their investor funds would be used. In communications directly with Plaintiffs and in the Wireless Power PPM, each of the Defendants told Plaintiffs that their investments would be used exclusively to buy ownership interests in three companies, two of which (Tesla and Texanova) were capable of, and essential to, capitalizing on the market for wireless transmission of electricity. (SAC, ¶ 21). Additionally, according to Defendants, the Wireless Power "opportunity" was the sole and exclusive mechanism to invest in this ground-breaking technology, and all of the necessary logistics – joint venture agreements, licensing agreements, marketing agreements, distribution agreements, etc. – were in place. (SAC, ¶¶ 20, 23-29).  But as alleged in the SAC, none of this was true.

Moreover, the SAC is replete with specific factual allegations concerning other material information that Defendants were aware of, but concealed from Plaintiffs. For example, although Plaintiffs knew that Defendant Harris was affiliated with Texanova, Defendants Shaw, Luna, and Wilson were also affiliated with Texanova (as reflected on Exhibit 2 to the SAC), and all of them knew, but failed to disclose to Plaintiffs, that Texanova was simply another failed project, with no

10

operations, no employees, no assets, or any viable business plan. (SAC, ¶¶ 31-32). None of the Defendants disclosed the existence of Holmes Financial, or that Randall owned the company and would use Holmes Financial to siphon Plaintiffs' investment funds directly to them (SAC, ¶¶ 33-34). These disbursements to Defendants Harris, Luna, Shaw, and Wilson for "services rendered," undisclosed commissions, so-called bonuses, and other unidentified reasons, were made at their insistence, sometimes immediately upon receipt of investor money (SAC, ¶¶ 33, 41-42, 63(A)(vi,), (vii), (x), (xii),.(xiii), (xvi), (xvii), (xviii)). In the fall of 2016, when Plaintiffs were demanding answers about their investments and requesting financial records, Defendants Harris, Shaw and Luna sought to lull them into believing the Wireless Power opportunity was still viable by assuring them that Tesla would transform into Zenneck Power and become a legitimate company (SAC, ¶¶ 29, 37-38). Eventually, though, Defendants had to come clean and disclosed to Plaintiffs how their funds had actually been distributed to each of the Defendants and others (SAC, Exs. 1 and 2). Perhaps most telling about Defendants' culpable state of mind, after revealing to Plaintiffs what had actually occurred with their funds, Defendant Harris promised to refund Plaintiff Knutson's investment (SAC, ¶ 63(A)(xx)).

As described above and in the SAC, these are not conclusory allegations unsupported by specific facts. Plaintiffs have alleged factual details concerning each of the Defendants, including how, in connection with soliciting investments in Wireless Power, they acted with the intent to deceive Plaintiffs or were severely reckless in doing so. And for Defendants Shaw and Wilson, this was nothing new, as both of them have been the target of other fraud schemes in North Texas (SAC, ¶¶ 11-12, 36). When these and the other allegations in the SAC are viewed holistically, as required, they are sufficient to allege Defendants' scienter.

11

C.      Plaintiffs Have Alleged Facts Establishing Reliance and Loss Causation

Defendants also argue that Plaintiffs failed to plead facts showing that they relied on any misstatement, or that such a statement caused Plaintiffs to suffer a loss.[4] *Defs.' Mot. To Dismiss*, ¶¶ 39-42.  To the contrary, as discussed above, the SAC alleges what Defendants told Plaintiffs about the Wireless Power opportunity, in specific detail, and that Plaintiffs relied on these statements or omissions when Defendants solicited their investments. Furthermore, Plaintiffs identified the funds they invested with references to specific dates and amounts (SAC, ¶¶ 26, 63(A)(viii), (ix), (xi)), and how those funds were squandered through Defendants' fraudulent conduct.

In summary, Plaintiffs' allegations in the SAC allege all of the required elements for a claim under Section 10(b) of the Exchange Act and Rule 10b-5 in compliance with Rules 9(b), 12(b)(6) and the PSLRA.  Therefore, Defendants' Motion to Dismiss this claim should be denied.

**III.    Plaintiffs Have Alleged a Plausible Claim for Control Person Liability Under Section 20 of the Exchange Act**

Under Section 20(a) of the Exchange Act, "every person who, directly or directly, controls any person liable under any provision of this chapter or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person."  *See* 15 U.S.C. § 78t(a).  This liability extends to the controlling person, unless he or she "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of

---

[4] Federal courts in Texas have recognized that the heightened pleading requirement in Rule 9(b) does not apply to pleading allegations of reliance or loss causation. *See N. Port Firefighters' Pension v. Temple-Inland, Inc.*, 936 F.Supp.2d 722, 761 (N.D. Tex. 2013) ("Such pleading of 'loss causation' is subject to the pleading standard of [Rule] 8(a)(2), rather than the heightened pleading requirement of Rule 9(b).") (citation omitted); *Timberlake v.Synthes Spine Co., L.P.*, 2009 WL 926990, 2009 U.S. Dist. LEXIS 29074, *19 (S.D. Tex. March 31, 2009) ("Despite Defendants' assertion to the contrary, Rule 9(b) does not require that Plaintiffs plead reliance with particularity or state how they specifically relied on each statement.").

action." *Id.*  Control person liability cannot exist in the absence of a primary violation of the Exchange Act. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004).

In the Motion to Dismiss, Defendants argue that Plaintiffs' claim under Section 20(a) should be dismissed because Plaintiffs fail to allege an underlying primary violation and fail to plead that Defendants acted to "induce the act or acts constituting the violation or cause of action." *Defs.' Mot. to Dismiss*, ¶ 43.  For the reasons discussed above, however, Plaintiffs have alleged a plausible claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5. The SAC alleges specific, particularized facts establishing all of the essential elements for a Section 10(b) claim:  1) a material representation or omission, (2) scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *See Dura Pharms.*, 544 U.S. at 341.

In terms of pleading control under Section 20(a), a plaintiff need only allege that a controlling person possessed the power to control or influence the primary violator, not that he actually exercised that power. *See In re Key Energy Servs. Sec. Litig.*, 166 F.Supp.3d 822, 842 (S.D. Tex. 2016) (citation omitted); *see also Temple-Inland*, 936 F.Supp.2d at 766 ("Plaintiffs must also allege that the controlling person has 'actual power or influence over the controlled person.'"). Indeed, the Fifth Circuit has rejected the notion that actual participation in the underlying violation is a prerequisite to pleading a *prima facie* case for control liability, because "lack of participation and good faith constitute an affirmative defense." *Temple-Inland*, 936 F.Supp.3d at 766 (citing and quoting *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 619-20 (5th Cir. 1993).  Moreover, the heightened pleading requirements in Rule 9(b) do not apply to claims for control person liability. *Id.* at 766 n. 47; *In re Key Energy Servs.*, 166 F.Supp.3d at 841.

010-8574-3762/4/AMERICAS

In the SAC, Plaintiffs have alleged sufficient facts demonstrating that Defendants acted as control persons under the statute. More specifically, the SAC alleges how each Defendant actively participated and assisted in executing the Wireless Power fraud. Each of the Defendants engaged in the fraudulent solicitation of investor funds from Plaintiffs and, either directly or indirectly, acted at the behest of each other. This includes the actions of each Defendant collecting and directing the flow of Plaintiffs' funds to themselves or others, contrary to the representations made to Plaintiffs about how their funds would be used to invest in the Wireless Power opportunity. (*See* SAC, ¶¶ 33, 41-42, 63(A)(vi,), (vii), (x), (xii),.(xiii), (xvi), (xvii), (xviii)). Thus, Plaintiffs have alleged a plausible claim for control person liability under Section 20 of the Exchange Act.

## IV.      Plaintiffs Claim Under Section 15(a)(1) of the Exchange Act

In the SAC, Plaintiffs allege that Defendants violated Section 15(a)(1) of the Exchange Act because they offered or sold securities to Plaintiffs as unregistered or unlicensed brokers under federal or state law.  (*See* SAC, ¶¶ 40-43, 51-53).  Defendants move to dismiss this claim arguing that no private cause of action exists under Section 15(a)(1). *Defs.' Mot. to Dismiss*, ¶ 44.

The Fifth Circuit has held that a private cause of action does, in fact, exist under Section 15(a)(1) of the Exchange Act, but in conjunction with the remedy of rescission under Section 29(b) of the Exchange Act. *See Regional Props., Inc. v. Fin. and Real Estate Consult. Co.*, 678 F.2d 552, 559 (5th Cir. 1982).  The rescission remedy in Section 29(b) serves to invalidate a contract with a broker or dealer who unlawfully sells securities without being licensed.

Plaintiffs have requested rescission as a remedy for their claims against Defendants (SAC, p. 17), and there appears to be no dispute that Defendants are not licensed or registered brokers under federal or state law. Plaintiffs anticipate that the evidence will reveal oral (or written) contracts with one or all of the Defendants.  Hence, this claim should not be dismissed.

14

**V.      Plaintiffs Have Alleged Plausible Claims for Violation of the Texas Securities Act**

Plaintiffs also allege that Defendants violated the antifraud and broker-registration provisions of the Texas Securities Act ("TSA). (*See* SAC, ¶¶ 54-57).  Defendants move to dismiss these claims, but only "to the extent Plaintiffs base their TSA claims on statements reflecting Defendants' personal opinions, beliefs about the future, or projections of future performance." *Defs.' Mot. to Dismiss*, ¶ 47.

In short, Plaintiffs' claims under the TSA are <u>not</u> predicated on any statements by Defendants reflecting personal opinions or future projections. In fact, as described above and alleged in the SAC, Defendants made false or misleading representations and omissions concerning existing, material facts while soliciting investor funds from Plaintiffs. These statements include, among other things, misrepresentations about the existence of actual agreements and partnerships between companies controlled by Defendants and other entities, the exclusive nature of the Wireless Power investment, the capabilities of Defendants' companies to capitalize on the wireless electricity technology, and the use of investor funds, to name a few. Defendants' misrepresentations and omissions on these as aspects of the Wireless Power opportunity do not involve opinions or predictions.

Moreover, even if some of Defendants' statements could be construed as opinions or predictions, they are still actionable. "The generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law." *Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987) (citations omitted).  There are, however, two recognized exceptions to this general rule. *First,* "[a]n opinion may constitute fraud if the speaker has knowledge of its falsity." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). *Second,* "[a]n expression of an opinion as to the

15

happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future. *Id.* (citations omitted). "[A] defendant does not place himself beyond the reach of securities laws merely by disclosing information that is predictive in nature…[W]hether liability is imposed depends upon whether the predictive statement was 'false' when it was made." *Isquith v. Middle S. Utils. Inc.*, 847 F.2d 186, 203 (5th Cir. 1988). "A statement of belief is a factual misstatement actionable under Section 10(b) if: (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 691 n.24 (5th Cir. 2014) (quoting *Reese v. Malone*, 747 F.3d 557, 579 (9th Cir. 2014)).

Again, as discussed above, Defendants' false and misleading statements and omissions that form the basis of Plaintiffs' claims under the TSA are misstatements of actual existing facts. But even Defendants' claims of trillions of dollars in potential revenue for Wireless Power, including $8 billion in revenue in the first year (*see* SAC, ¶¶ 3, 61), are actionable. With virtually none of the necessary agreements or arrangements in place, no experienced and capable personnel, and no ability to actually perform as they promised, Defendants had no reasonable basis for believing their projections of success and future revenue for Wireless Power were accurate. Therefore, Plaintiffs' claims under the TSA survive dismissal.

## VI.    Plaintiffs Have Alleged a Plausible Claim for Conspiracy Under Texas Law

Defendants also argue that Plaintiffs' state law claim for conspiracy should be dismissed. Defendants do not address any of the elements of a conspiracy claim under Texas law.  Rather, they merely assert that Plaintiffs' claim is based on "impermissible group pleading." *Defs.' Mot. to Dismiss*, ¶ 49.

16

To allege a claim for conspiracy, a plaintiff must plead:  (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish (a) an unlawful purpose, or (b) a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

In sum, the SAC alleges each of these essential elements for a conspiracy claim. More specifically, Plaintiffs' allegations describe how each of the Defendants, individually, played a role in the scheme to defraud Plaintiffs. These specific allegations are included in, but not limited to, the laundry list of some twenty (20) overt acts committed by each of the Defendants in furtherance of their scheme. (*See* SAC, ¶ 63(A)).  Moreover, as noted above, such defendant-specific allegations do not constitute "group pleading." These are particularized allegations providing specific details of each Defendants' involvement in the conspiracy.  Hence, Plaintiffs' have alleged a plausible claim for relief, and the Motion to Dismiss should be denied.

## VII.   Defendants' Motion to Abate Discovery is Premature

With no argument or citation to authority, Defendants request the Court to abate discovery in this case while the Court considers the Motion to Dismiss. The PSLRA calls for a stay of discovery in a private securities fraud action while a motion to dismiss is pending, unless the Court finds, upon a party's motion, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.  *See* 15 U.S.C. § 77z-1(b)(1); 15 U.S.C. § 78u-4.  This Court, however, has recognized the two primary purposes of this stay:  (1) to prevent the imposition of an unreasonable burden on a defendant before disposition of a motion to dismiss; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to meet the heightened pleading requirements of the PSLRA, then uses discovery to acquire that information

17

and resuscitate a complaint that is otherwise subject to dismissal. *See Lapicola v. Alternative Dual Fuels*, 2002 U.S. Dist. LEXIS 5941, *3-4 (N.D. Tex. Apr. 8, 2002) (citing *In re Comdisco Securities Litigation*, 166 F. Supp. 2d 1260, 1263 (N.D. Ill. 2001)).

Except for Rule 26(a)(1) initial disclosures which have been ordered by the Court, there is no outstanding discovery in this case.  Plaintiffs have not served Defendants or any third parties with any written discovery in order to gather information to avoid dismissal of the SAC. In addition, Defendants have not even argued, much less demonstrated, that responding to initial disclosures imposes an unreasonable burden before the Court rules on the Motion to Dismiss. Because neither of the concerns for ordering a stay under the PSLRA is present here, Defendants' request to stay discovery is premature and should be denied.

## VIII.  Plaintiffs Should Be Granted Leave to Amend If the Court Determines Their Claims Do Not Satisfy the Pleading Requirements

Finally, insofar as the Court determines that any or all of Plaintiffs' claims do not satisfy the pleading requirements under Rules 9(b), 12(b)(6) and the PSLRA, Plaintiffs respectfully request that they be allowed an opportunity to amend their Complaint.

Fed. R. Civ. P. 15(a)(2) states:  "[t]he court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2).  Although leave to amend is not automatic, the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  In fact, Rule 15(a) "evinces a bias in favor of granting leave to amend." *Greco v. NFL*, 116 F. Supp.3d 744, 753 (N.D. Tex. 2015) (Lynn, J.).  That is, "a district court must have a 'substantial reason' to deny leave." *Id.* (citing *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982) (other citations omitted).  In exercising its discretion whether to grant leave to amend, the Court

18

considers several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (quoting *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th 2012).

In short, all of these factors weigh in favor of granting leave to Plaintiffs to file a Third Amended Complaint, if necessary. In fact, the District Court previously considered these factors and allowed Plaintiffs to file their Second Amended Complaint.  (*See* Doc. 19).  These factors remain unchanged.

*First*, there is no undue delay, bad faith, or dilatory motive by Plaintiffs in seeking leave to amend. *Second*, there has been no repeated failure to cure deficiencies through previously allowed amendments.  Indeed, courts in this District have traditionally allowed plaintiffs to amend a complaint following a ruling on a Rule 12(b)(6) motion to dismiss, especially when the plaintiff has not had the benefit of the court's decision as to why the complaint is deficient. *See e.g., Lohr v. Gilman*, 248 F.Supp.3d 796, 813 (N.D. Tex. 2017) (Lindsay, J.) (concluding that plaintiff should be allowed to amend complaint a second time "with the benefit of having the court's decision before her."); *Clapper v. Am. Realty Investors, Inc.*, 2015 U.S. Dist. LEXIS 71543, *42 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (allowing plaintiffs to amend complaint a second time, noting that plaintiffs amended once but "before the Court identified specific deficiencies in the pleadings. Plaintiffs are often able to state plausible claims for relief once the court identifies the defects in their pleadings and permits them to amend.").

*Third*, Defendants cannot show they would be unduly prejudiced by allowing Plaintiffs an opportunity to amend their pleading.  *Fourth*, allowing Plaintiffs to amend would not be futile. "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." *Greco*,

116 F. Supp.3d at 756 (quoting *Moore v. Dallas Indep. Sch. Dist.*, 557 F. Supp.2d 755, 759-60 (N.D. Tex. 2008) (emphasis in original). Allowing Plaintiffs to amend their Complaint, if the Court deems it necessary after ruling on the Motion to Dismiss, would not be clearly futile.

For all of these reasons, to the extent the Court determines that any or all of Plaintiffs' claims do not satisfy the pleading requirements in Rules 9(b), 12(b)(6) and the PSLRA, Plaintiffs should be allowed another opportunity to amend their Complaint.

## <u>CONCLUSION</u>

Plaintiffs' Second Amended Complaint alleges plausible claims for relief under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 20 of the Exchange Act, the Texas Securities Act, and conspiracy under Texas law. Accordingly, Plaintiffs respectfully urge the Court to deny Defendants' Motion to Dismiss.  Alternatively, if the Court determines that the Second Amended Complaint does not satisfy the applicable pleading standards, Plaintiffs respectfully request leave to file an amended complaint in accordance with the Court's decision.

010-8574-3762/4/AMERICAS

Dated: January 12, 2018.

Respectfully submitted,

*/s/ S. Cass Weiland*
S. Cass Weiland
State Bar No. 21081300
Robert A. Hawkins
State Bar No. 00796726
SQUIRE PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
214/758-1500
214/758-1550 facsimile
cass.weiland@squirepb.com
robert.hawkins@squirepb.com

and

Rose L. Romero
State Bar No. 17224700
LAW OFFICES OF ROMERO KOZUB
235 N.E. Loop 820
Suite 310
Hurst, Texas 76053
682/267-1351
rose.romero@romerokozub.com

ATTORNEYS FOR PLAINTIFFS TERRY KNUTSON,
DONAL BARRY, AND WIRELESS POWER, LLC

21

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 12, 2018, the above and foregoing pleading was served via electronic transmission on all counsel of record in accordance with the Court's ECF-filing system.

*/s/ S. Cass Weiland*
S. Cass Weiland
