**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TERRY KNUTSON, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-CV-2618-BK** |
| | § | |
| **DON HARRIS, et al.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

The parties have consented to proceed before the undersigned magistrate judge. Now before the Court is *Defendants Don Harris, Charles Shaw, Michael K. Wilson, and Robert Luna's Motion to Dismiss Plaintiffs' Second Amended Complaint with Prejudice*, Doc. 22. For the reasons stated here, Defendants' motion is **GRANTED**.

**I. BACKGROUND**

Plaintiffs bring this action against Don Harris, Charles Shaw, Michael K. Wilson, and Robert Luna (collectively, "Defendants") arising out of the allegedly fraudulent offer and sale of securities in Wireless Power LLC ("Wireless Power"). Plaintiffs allege that Defendants set up Wireless Power in October 2014 and marketed it as being "on the verge of capitalizing on a ground-breaking and revolutionary opportunity to harness electricity and to distribute it wirelessly to all parts of the globe." Doc. 20 at 5. "[A]t various times, each of the Defendants" represented to Plaintiffs that Wireless Power had already "laid the groundwork for the transmission of these electricity services" and entered into agreements with other entities. Doc. 20 at 6.

In January 2016, Defendants Harris, Shaw, and Wilson told Plaintiff Knutson that investments in Wireless Power would be used to purchase ownership interests in three other

entities, Tesla Energy, LLC ("Tesla"), Texanova Energy, Inc. ("Texanova"), and Texzon

Technologies, Inc. ("Texzon"), that would play various roles in Wireless Power's business

model. Doc. 20 at 6. Plaintiffs allege that "Defendants knew these descriptions were false or

misleading, and designed to obtain large investments under false pretenses." Doc. 20 at 6.

"Defendants repeatedly told Plaintiffs" that the only way to participate in the Wireless Power

opportunity was to invest in Tesla, Texanova, and Texzon, a statement that Defendants Harris

and Shaw reiterated at a dinner in Dallas, Texas in April 2016. Doc. 20 at 6-7.

Plaintiffs allege that from at least January 2015, Defendants offered and sold securities in

the form of membership units in Wireless Power. Doc. 20 at 7. Defendants marketed these

membership units in, *inter alia*, a private placements memorandum (the "Wireless Power PPM"),

"which they wrote or were responsible for." Doc. 20 at 7. The Wireless Power PPM was

provided to Plaintiffs and contained "materially false and misleading statements and omissions

concerning the investments" in Wireless Power. Doc. 20 at 7. Specifically, Plaintiffs allege that

Defendants "had knowledge of and deliberately or recklessly misrepresented" certain aspects of

Tesla and Texzon. *See* Doc. 20 at 8. Plaintiffs further allege that, "[t]hroughout 2016,"

Defendant Harris made four misrepresentations regarding Texanova's capabilities and

affiliations that Defendants Shaw, Luna, and Wilson knew were untrue. *See* Doc. 20 at 8-9.

Additionally, Plaintiffs allege that Defendants misrepresented various aspects of Wireless

Power's structure and management, namely that it was an affiliate of Texzon Utilities Ltd. and

that a credentialed list of individuals served the company as officers and directors. Doc. 20 at 9.

Plaintiffs also characterize as "egregious" Defendants' failure to inform them that Rick Randall owned or was affiliated with Holmes Financial LLC[1] ("Holmes Financial") or that Randall "planned to use Holmes Financial for his own benefit and that of the other Defendants."[2] Doc. 20 at 9. Plaintiffs state that it was Randall who, with the help of Defendants, orchestrated various transfers of investor funds that were contrary to the terms of the offering documents and Defendants' representations. Doc. 20 at 9-10. Following meetings in August, September, and October of 2016, "Plaintiffs began to aggressively question the disappearance of their investments." Doc. 20 at 10-11. Lastly, Plaintiffs state that "during the relevant period," none of the Defendants were registered brokers, yet they "met with and induced people to invest and participate in the marketing or sale of securities." Doc. 20 at 11.

In their Second Amended Complaint, Plaintiffs assert claims against all Defendants for (1) violations of section 10(b) of the Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"); (2) violations of section 15(a)(1) of the Exchange Act; (3) rescission under the Texas Securities Act; and (4) conspiracy to defraud. Doc. 20 at 12-17. Plaintiffs also assert a claim against Defendant Harris for control person liability under section 20(b) of the Exchange Act. Doc. 20 at 12-13. Defendants subsequently moved to dismiss all of Plaintiffs' claims under Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 22. A response and reply have been filed. Doc. 26; Doc. 28.

---

[1] The only other allegation concerning Holmes Financial is that it held a bank account into which investor funds were transferred. Doc. 20 at 12.
[2] Randall was named as a Defendant in Plaintiffs' Original Complaint and First Amended Complaint, *see* Doc. 1; Doc. 10, but has since been dismissed from this lawsuit, Doc. 14.

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation omitted). However, a court will not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions[.]" *Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). A court may also consider documents attached to a motion to dismiss, provided that they are referenced in the plaintiff's complaint and central to his or her claims. *Collins*, 224 F.3d at 498-99.

## III. ARGUMENT AND ANALYSIS

### A.     Section 10(b) and Rule 10b–5

Plaintiffs allege violations of section 10(b) and Rule 10b-5. Section 10(b) makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules

and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 implements this provision by making it unlawful to, *inter alia*, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). Defendants move to dismiss these claims on the grounds that Plaintiffs failed to allege them with the requisite particularity. *See* Doc. 22 at 7-18. In response, Plaintiffs insist that their claims are properly pleaded. Doc. 26 at 11-18.

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities, "(1) a misstatement or omission [by the defendant]; (2) of a material fact; (3) made with scienter; (4) on which the plaintiff[] relied; and (5) that proximately caused the plaintiff['s] injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citation omitted). Additionally, the plaintiff must satisfy Rule 9(b)'s heightened pleading standard, which was adopted by the Private Securities Litigation Reform Act ("PSLRA") in an effort to curb the filing of frivolous securities fraud lawsuits. *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003). This requires "a plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim" to:

> (1) specify . . . each statement alleged to have been misleading, *i.e.*, contended to be fraudulent; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, *i.e.*, why the statement is fraudulent.

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002). "This is the 'who, what, when, where, and how' required under Rule 9(b) in our securities fraud jurisprudence and

under the PSLRA." *Id.* Furthermore, the Court of Appeals for the Fifth Circuit has made clear its disapproval of "group pleading" in securities-fraud complaints. *See Southland*, 365 F.3d at 364-65. Thus, allegations that an undifferentiated group of "defendants" made false or misleading statements are insufficient – plaintiffs must "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Id.* at 365 (quotation marks omitted; emphasis in original); *see also Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 797 (N.D. Tex. 2006) (Fitzwater, J.) ("in a PSLRA action an allegation made against the 'defendants' will normally have the effect of naming *no* defendant at all") (emphasis in original).

Additionally, to survive a motion to dismiss a securities-fraud action, plaintiffs must plead specific facts establishing a strong inference of scienter. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (citation omitted). In a securities fraud case, scienter "connotes an intent to deceive, manipulate, defraud or severe recklessness." *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) (internal quotation marks and citation omitted). "Severe recklessness is marked by an extreme departure from the standard of ordinary care, and is limited to highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence." *Id.* (internal quotation marks and citation omitted). In considering whether the pleaded facts give rise to a strong inference of scienter, courts consider all of the facts alleged, taken collectively, as well as plausible opposing inferences. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Ultimately to create an inference of scienter, "the allegations in the complaint must be 'cogent and compelling,' not simply 'reasonable,' or 'permissible.'" *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*, 537 F.3d 527, 533 (5th Cir. 2008). The Fifth Circuit has also rejected the group pleading approach to scienter. *Id.* Thus, scienter must "be

pleaded with regard to each act or omission sufficient to give rise to a strong inference that the defendant acted with the required state of mind." *Southland*, 365 F.3d at 364 (citation and internal quotation marks omitted).

Plaintiffs predicate their securities fraud claims on various alleged misrepresentations and omissions. Each is addressed in turn.

### 1. Statements Made at the January 19 Meeting

Plaintiffs allege that on January 19, 2016, Defendants Harris, Shaw, and Wilson met with Plaintiff Knutson, told him that his investments in Wireless Power would be used to purchase ownership interests in Tesla, Texanova, and Texzon, and described each entity's role. Doc. 20 at 6. Plaintiffs further allege that "[a]t the time, each of the Defendants knew these descriptions were false or misleading, and designed to obtain large investments under false pretenses." Doc. 20 at 6. Noticeably missing, however, is any information about where these statements were made, or why/how these statements were false. *ABC Arbitrage*, 291 F.3d at 350.

### 2. Statements Regarding Exclusivity

Plaintiffs allege that "Defendants repeatedly told Plaintiffs and other investors that" purchasing stock in Tesla, Texanova, and Texzon was the only way to be involved with Wireless Power's wireless electricity technology, specifically noting a dinner in Dallas in April 2016 where Defendants Harris and Shaw "continu[ed] to claim exclusivity while refusing to produce financial records." Doc. 20 at 7. However, Plaintiffs' general claim that "Defendants" repeatedly claimed exclusivity is inadequate, as it fails to explain which Defendants made the claims, where and when the claims were made, or why the claims were false. *ABC Arbitrage*, 291 F.3d at 350. The allegation concerning the April 2016 dinner is also deficient, as Plaintiffs fail to explain why or how these claims were false. *Id.*

### 3. Statements in the Wireless Power PPM

Plaintiffs' securities fraud claims center on alleged material misrepresentations and omissions made in the Wireless Power PPM, which they allege was created and used by "Defendants." *See* Doc. 20 at 7-10. Specifically, Plaintiffs allege that in the Wireless Power PPM, "each of the Defendants had knowledge of and deliberately or recklessly misrepresented" aspects of Defendants' affiliated entities, which they go on to list. Doc. 20 at 7-8.

As stated previously, courts may not construe allegations directed against defendants as a group as imputable to any individual defendant, absent a connection between the allegedly fraudulent statement and the individual defendant. *Southland*, 365 F.3d at 365. Thus, Plaintiffs' bare assertion that "Defendants" "wrote or were responsible for" the Wireless Power PPM does not, in itself, connect any individual Defendant to the allegedly fraudulent statements contained therein. *See id.* (allegation that each defendant controlled the contents of and participated in writing a company's SEC filings, reports, and releases, without more, was insufficient to meet the requirements of the PSLRA). While corporate documents lacking a corporate author or corporate statements unattributed to any individual can be charged to a specific individual, there must be "specific factual allegations link[ing] the individual to the statement at issue," e.g., a signature on the document or factual allegations explaining the individual's role in the creation of the document. *Southland*, 365 F.3d at 365. Here, however, Plaintiffs allege no factual link between any of the individual Defendants and the specifically alleged misrepresentations in the Wireless Power PPM.

### 4. Statements Made by Defendant Harris

Plaintiffs next allege that Defendant Harris made various misrepresentations regarding Texanova "[t]hroughout 2016 . . . either in the Wireless Power PPM . . . or in other

communications directly to investors." Doc. 20 at 8. First, Plaintiffs' allegation that Defendant

Harris' misrepresentations were made "[t]hroughout 2016" fails to state the "when" with

sufficient particularity. *See Southland*, 365 F.3d at 383 (allegations not stated with sufficient

particularity where they stated only that the defendant acted in a certain manner sometime during

1998). Second, it is unclear how these statements were made, as Plaintiffs state that they were

either made in the Wireless Power PPM or in some unspecified "other communications" made

directly to investors. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 797 (N.D.

Tex. 2009) (Boyle, J.) (finding the "how" insufficiently pleaded where it was unclear whether a

statement was oral or written). Third, while Plaintiffs allege that Defendants Shaw, Luna, and

Wilson were aware that Defendant Harris' statements were false, they fail to allege that

Defendant Harris knew this as well, and thus fail to allege that he acted with the requisite

scienter. Doc. 20 at 9; *see Blackwell*, 440 F.3d at 287.

**5. Statements Regarding the Structure and Management of Wireless Power**

Plaintiffs allege that "the Defendants" made misrepresentations concerning Wireless

Power's structure and management. Doc. 20 at 9. Again, Plaintiffs' vague reference to "the

Defendants" constitutes impermissible group pleading. *See In re Alamosa Holdings, Inc.*, 382 F.

Supp. 2d 832, 857 (N.D. Tex. 2004) (Cummings, J.) ("allegations in the Complaint made against

'Defendants' (plural or group) do not meet the requirements of pleading allegations of fraud").

Indeed, no attempt is made to connect any individual Defendant with these allegedly fraudulent

statements. Furthermore, Plaintiffs fail to allege where, when, or how these statements were

made. *ABC Arbitrage*, 291 F.3d at 350; *see Berry*, 608 F. Supp. 2d at 797 (finding that plaintiff

failed to allege the "where" of his fraud claim where he "fail[ed] to specify even the state, much

less a more precise location, in which the[] representations were made").

**6. Failure to Disclose Rick Randall's Involvement**

Plaintiffs allege that Defendants' failure to disclose Rick Randall's involvement in their business venture was an "egregious" material omission. Doc. 20 at 9. However, regardless of whether the omission can be considered material, Plaintiffs did not allege that Defendants acted with scienter in failing to disclose Randall's role. *Southland*, 365 F.3d at 364; *see Tran v. XBiotech INc.*, No. A-15-CA-1083-SS, 2016 WL 5408382, at *9 (W.D. Tex. Sept. 23, 2016) (dismissing securities fraud claim based on plaintiffs' allegation that defendants misled them by failing to disclose CEO's lack of experience where plaintiffs failed to specifically address defendants' state of mind in failing to disclose the information, and thus failed to allege scienter).

**7. Other Deficiencies**

Plaintiffs also fail to properly plead reliance in connection with any alleged misrepresentations. *Southland*, 365 F.3d at 362. "Reliance . . . generally requires that the plaintiff have known of the particular misrepresentation complained of, have believed it to be true and because of that knowledge and belief purchased or sold the security in question." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 413 (5th Cir. 2001); *see also Steiner v. Southmark Corp.*, 734 F. Supp. 269, 275 (N.D. Tex. 1990) (Fitzwater, J.) ("Reliance requires a plaintiff to prove that the plaintiff *actually* based decisions upon the defendant's misstatements or omissions.") (emphasis in original). Plaintiffs allege that Rule 9(b)'s pleading requirements do not apply to allegations of reliance. Doc. 26 at 18 n.4 (citing *Timberlake v. Synthes Spine Co., L.P.*, No. V-08-4, 2009 WL 926990, at *6 (S.D. Tex. Mar. 31, 2009)). However, "[t]he Fifth Circuit . . . and other district courts within [the circuit] have either held or strongly suggested that Rule 9(b)'s particularity requirement extends to allegations of actual reliance." *In re BP P.L.C. Sec. Litig.*¸ No. 4:12-CV-1256, 2013 WL 6383968, at *39 n.23 (S.D. Tex. Dec. 5, 2013)

(collecting cases and noting that holdings to the contrary are in the minority). Thus, "at a minimum, Rule 9(b) requires Plaintiffs to specify 'with particularity' what action [they] took or forewent in reliance upon Defendants' alleged misrepresentations." *Id.* at 41 (citing *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 830 (S.D. Tex. 2007) (emphasis omitted)).

Nowhere in their Second Amended Complaint do Plaintiffs state that they relied on a particular alleged misrepresentation in deciding to invest in Wireless Power. The only time reliance is even mentioned is in the context of Plaintiffs' state law conspiracy to defraud claim. *See* Doc. 20 at 14-17. There, Plaintiffs generally allege that beginning in at least January 2015, "Defendants . . . conspired with each other to defraud Plaintiffs by extracting large investments through the use of misrepresentations and omission upon which the Plaintiffs relied and suffered damages as a result." Doc. 20 at 14. Plaintiffs also identify three specific investments that Knutson ("$1,625 million [sic]") and Barry ("$3 million" and "1.020 million") made in Wireless Power in February 2016. Doc. 20 at 16. Plaintiffs allege that Knutson and Barry were "enticed" by Defendants to invest these amounts "through deceit and material misrepresentations." Doc. 20 at 16. However, these allegations, which group Defendants together and do not state with particularity which statements were relied on, are far too general to allege a securities fraud claim. *In re BP*, 2013 WL 6383968, at *41; *see, e.g.*, *Wu v. Tang*, No. 3:10-CV-0218-O, 2011 WL 145259, at *7 (N.D. Tex. Jan. 14, 2011) (O'Connor, J.) (finding that general statement of plaintiffs' reliance on undifferentiated defendants' misrepresentations was not sufficient to allege securities fraud). Crucially lacking are any allegations tying Knutson and Barry's decisions to invest in Wireless Power to any of the specific alleged misrepresentations identified in the Second Amended Complaint. *Cf. Lohr v. Gilman*, 248 F. Supp. 3d 796, 808 (N.D. Tex. 2017)

(Lindsay, J.) (reliance sufficiently alleged where the plaintiff identified specific misrepresentations, stated how she relied on misrepresentations, and alleged what the defendants received as a result of her reliance on the misrepresentations); *Steiner*, 734 F. Supp. at 275 (reliance sufficiently alleged where plaintiffs alleged that they "relied . . . upon [the corporate defendant's] public reports, press releases, statements, SEC filings, and the certifications of [the individual defendant] in purchasing . . . securities" and then detailed these documents throughout the remainder of the complaint).

Lastly, in pleading their section 10(b) and Rule 10b-5 claims, Plaintiffs fail to connect the alleged misrepresentations to the specific elements of those claims, and essentially ask the Court to, as Defendants state, "unpack the allegations and piece together" a claim. Doc. 22 at 9. This practice of "isolating allegations and elements while leaving it to the Court to infer a connection" is known as "puzzle pleading" and is not permitted. *See Alamosa Holdings, Inc.*, 382 F. Supp. 2d at 857-58 (noting that "it is the parties' burden to present succinct pleadings which clearly lay out the elements as required by this Circuit" and that a court "need not waste its resources attempting to construe which statements are actionable and why each is actionable"). Even in their response, Plaintiffs fail to demonstrate how the allegations in their Second Amended Complaint satisfy the applicable pleading standards. Instead, Plaintiffs merely repeat the allegations in their Second Amended Complaint in bullet-point format and blithely state that "these allegations clearly identify of [sic] the time, place, and nature of fraudulent behavior and each Defendant's relationship thereto, as required by Rule 9(b)." Doc. 26 at 12-15.

For these reasons, Plaintiffs have failed to properly allege violations of section 10(b) and Rule 10b-5. The allegations that Plaintiffs omit are not simply "punctilious pleading detail," but are essential elements of their claims. *Steiner*, 734 F. Supp. at 273. Accordingly, Defendants'

motion to dismiss Plaintiffs' claims under section 10(b) of the Exchange Act and SEC Rule 10b-5 is **GRANTED**.

**B.**      <u>**Control Person Liability**</u>

Plaintiffs seek to impose control person liability against Defendant Harris under section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b). Doc. 20 at 12-13. However, as Defendants note in their motion, control person liability is "derivative," meaning that "if a plaintiff fails to state a claim for a primary violation of section 10(b) or Rule 10b-5, any claim for control person liability fails." *In re Key Energy Servs., Ins. Sec. Litig.*, 166 F. Supp. 3d 822 (S.D. Tex. 2016) (citing *ABC Arbitrage*, 291 F.3d at 348 n.57). For the reasons stated above, Plaintiffs failed to plead a predicate section 10(b) or Rule 10b-5 claim, thus, no primary violation on which Plaintiffs may premise their section 20 claim exists. *Id.* Accordingly, Defendant's motion to dismiss Plaintiffs' claims under section 20 of the Exchange Act is **GRANTED**. *See Budde v. Glob. Power Equip. Grp., Inc.*, No. 3:15-CV-1679-M, 2017 WL 6621540, at *6 (N.D. Tex. Dec. 27, 2017) (Lynn, C.J.) ("Because Plaintiffs do not state a claim for violation of Section 10(b), their [controlling person liability] claims must also be dismissed.").

**C.**      <u>**Section 15(a)(1)**</u>

Plaintiffs allege that all Defendants violated section 15(a)(1) of the Exchange Act, which prohibits an unregistered "broker or dealer" from effecting securities transactions. *See* 15 U.S.C. § 78*o*(a)(1). In support of dismissal, Defendants argue, *inter alia*, that no private right of action exists under section 15(a)(1). Doc. 22 at 19. In response, Plaintiffs contend that the Fifth Circuit "has held that a private cause of action does, in fact, exists under section 15(a)(1) . . . in conjunction with the remedy of rescission under Section 29(b) of the Exchange Act." Doc. 26 at 20.

Contrary to Plaintiffs' assertion, the Court of Appeals for the Fifth Circuit has not yet addressed whether a private right of action exists under section 15(a)(1). The case Plaintiffs cite in support of their claim that a private right does exist, *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982), reaches no such conclusion. Specifically, *Regional* addressed whether a private right of action exists under section 29(b), not section 15(a)(1). *Id.* at 557-58. As relevant here, *Regional*, stands for the proposition that a rescission action under section 29(b) can be predicated on a violation of section 15(a)(1). *Id.* at 561-62.

In the case *sub judice*, Plaintiffs have not alleged a claim under section 29(b) in their Second Amended Complaint. *See* Doc. 20, *passim*. Indeed, the Second Amended Complaint is devoid of even the most fleeting reference to section 29(b). Conversely, it is clear from the structure of Plaintiffs' complaint that they intended to bring a stand-alone claim under section 15(a)(1). *See* Doc. 20 at 13 (listing as their "Third Claim" a "Violation of Section 15(a)(1) of the Exchange Act"). That said, Plaintiffs also fail to offer any legal authority sanctioning a standalone claim under section 15(a)(1).[3] Accordingly, as is consistent with this Court's jurisprudence, Defendant's motion to dismiss Plaintiffs' claim under section 15(a)(1) of the Exchange Act is **GRANTED**. *See, e.g., Lohr*, 248 F. Supp. 3d at 810 (dismissing section 15(a)(1) claim where the plaintiff failed to allege a violation of section 29(b) in her complaint).

---

[3] While the Fifth Circuit has yet to rule on the existence of a private right of action under section 15(a)(1), as noted by another district court, "an overwhelming majority of courts have held that section 15 does not give rise to a private cause of action." *See Sheldon v. Vermonty*, 204 F.R.D. 679, 684 (D. Kan. 2001) (collecting cases).

**D.     State Law Claims**

Because the Court has granted the motion to dismiss all of Plaintiffs federal claims, it

must reassess its exercise of pendent jurisdiction over Plaintiffs' remaining state law claims.  *See*

*Enochs v. Lampasas, Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (stating that the district court

should reconsider its jurisdiction over "state law claims as of the moment" the federal claims are

deleted from the case).

Federal Courts may, under limited circumstances, exercise jurisdiction over state law

claims

> in any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related
> to claims in the action within such original jurisdiction that they form part of the
> same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  However, a district court may decline to exercise supplemental jurisdiction

if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. §

1367(c)(3).  Though the court's decision is discretionary, the Supreme Court of the United States

has ruled that "[n]eedless decisions of state law should be avoided both as a matter of comity and

to promote justice between the parties, by procuring for them a surer-footed reading of

applicable law."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Thus,

"[w]hen a court dismisses all federal claims before trial, the general rule is to dismiss any

pendent claims."  *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v.*

*Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

In determining whether to retain supplemental jurisdiction over pendent state law claims,

a federal court considers both statutory and common law factors.  *Enochs,* 641 F.3d at 159. The

applicable statutory factors are whether: (1) the state claims raise novel or complex issues of

state law; (2) the state claims substantially predominate over the federal claims; (3) the federal

claims have been dismissed; and (4) whether there are exceptional circumstances or other

compelling reasons for the Court to decline to exercise jurisdiction. *Id.* The related common law

factors are: (1) judicial economy; (2) convenience; (3) fairness; and (4) comity. *Id.*

Here, the balance of statutory and common law factors weighs in favor of the Court

declining to retain jurisdiction over Plaintiffs' state law claims. The Court has not expended

significant time or judicial resources on a determination of the merits. Ostensibly, a Dallas state

court is just as convenient a forum as a federal court sitting in Dallas. Compelling, is the fact

that no claims remain over which this court has original jurisdiction, and Plaintiffs' only

remaining claims arise under Texas law. Thus, in this instance, justice would be best served by a

Texas state court applying and interpreting Texas law. Accordingly, Plaintiffs' remaining state

law claims are **DISMISSED WITHOUT PREJUDICE**. *See Bass*, 180 F.3d at 246 ("dismissal

of the pendent claims should expressly be without prejudice so that the plaintiff may refile his

claims in the appropriate state court").

## IV. LEAVE TO AMEND

In their response, Plaintiffs request leave to amend their complaint a third time if any of

their claims are found to be improperly pleaded. Doc. 26 at 24-26. Defendants reply that

Plaintiffs have been afforded a sufficient opportunity to properly plead their claims and that their

repeated failure to do so warrants dismissal with prejudice. Doc. 28 at 3-4. Upon review, the

Court concludes that allowing Plaintiffs to replead their federal securities claims would be futile

and cause undue delay.

A court may dismiss a claim that fails to meet the pleading requirements, but "it should

not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff

has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*

*v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted).  In the instant case,

Plaintiffs have already amended their complaint twice, filing their First Amended Complaint as a

matter of course and their Second Amended Complaint with the Court's leave.  *See* Doc. 10;

Doc. 18.  Notably, Plaintiffs' Second Amended Complaint was filed in response to Defendants'

first motion to dismiss, which, as the one before the Court, alerted Plaintiffs to the applicable

pleading standards and the deficiencies in their federal securities claims.  *See* Doc. 15.  Still,

however, these same deficiencies permeate Plaintiffs' Second Amended Complaint.  *See Wu,*

*2011 WL 145259, at *11* (denying plaintiffs leave to amend their securities fraud claims where

the court had previously granted leave to amend and the defendants' prior motion to dismiss

made plaintiffs "fully aware" of the defendants' objections to the sufficiency of their pleadings);

*see also In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003)

(Lindsay, J.) ("The extent of the deficiencies in the Complaint is a strong indication that

amendment would be futile.").

      The futility of further amendment is also evidenced by the way Plaintiffs requested leave

to amend.  Despite being made aware of the extent to which their claims are deficient by the

motion *sub judice*, as well as the fact that Defendants are seeking dismissal with prejudice,

Plaintiffs gave no indication or assurances in their response that they <u>can</u> amend their federal

securities claims to survive a potential third motion to dismiss.  For example, Plaintiffs have not

demonstrated how they would replead said claims to avoid dismissal if given another

opportunity, proffer a proposed third amended complaint, or suggest any additional facts not

initially pleaded that could, if necessary, cure the deficiencies raised by Defendants.  *See*

*Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003) (affirming denial of leave to

amend securities fraud claims where plaintiffs requested leave in their response brief but failed to

demonstrate how they would replead their deficient claims, proffer a proposed amended complaint, or suggest additional facts that could cure the defects in their complaint); *see also McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs, despite not having previously amended their complaint, "failed to furnish the district court with a proposed amended complaint and failed to alert both the court and defendants to the substance of their proposed amendment"). Plaintiffs' conclusory assertion that granting leave to amend "would not be futile" is insufficient. Doc. 26 at 25.

This Court has disapproved of "routine and perfunctory" requests to amend, like the one here, which are thrown in as a "safety valve" in the event a court rules in favor of the defendant, particularly where a plaintiff's claims are clearly deficient. *See Capstead*, 285 F. Supp. at 567 (noting that this "wait-and-see-what-happens" approach results in "the parties expending considerable time and effort briefing the motion to dismiss" and forces the court "to expend scarce judicial resources drafting an opinion when no effort has been made to inform the court how the deficiencies could be cured"); *see also England v. JPMorgan Chase Bank, N.A.*, No. 2014 WL 12588508, at *2 (N.D. Tex. June 19, 2014) (Means, J.) (denying plaintiff's "perfunctory" request for leave to amend that failed to identify possible amendments to his deficient claims or include a copy of a proposed amended pleading). Additionally, Plaintiffs' failure to include their proposed third amended complaint contravenes this Court's Local Civil Rules. *See* N.D. TEX. L. CIV. R. 15.1 (requiring a request for leave to amend be accompanied by a copy of the proposed amended pleading).

As discussed *supra*, the deficiencies in Plaintiffs' Second Amended Complaint are glaring, as it lacks allegations pertaining to the essential elements of their federal securities claims. In light of the repeated opportunities that Plaintiffs have been afforded to properly plead

their federal securities claims, as well as their failure to give the Court any indication that they actually can cure the deficiencies identified by Defendants, the Court must conclude that Plaintiffs have already pled their best case. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). Thus, the Court declines to grant leave to further amend.

## V. CONCLUSION

For the foregoing reasons, *Defendants Don Harris, Charles Shaw, Michael K. Wilson, and Robert Luna's Motion to Dismiss Plaintiffs' Second Amended Complaint with Prejudice*, Doc. 22, is **GRANTED**. Plaintiffs' federal securities claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** on September 6, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE